UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OMAR JOHNSON,

                                        Plaintiff,

v.

                                                                15-CV-649(HKS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                                        Defendant.

## DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. #19.


        Omar Johnson ("plaintiff"), who is represented by counsel, brings this

action pursuant to the Social Security Act ("the Act"), seeking review of the final decision

of the Commissioner of Social Security ("the Commissioner") denying his applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This

Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before

the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure. Dkt.##11, 15.


## BACKGROUND

        Plaintiff protectively filed applications for DIB and SSI in July, 2010,

alleging disability commencing January 7, 2010, due to human immunodeficiency virus

("HIV"), bone problems, herpes, leg neuropathy, knee inflammation, diarrhea, and appetite problems. T. 156-65, 169-75, 194.[1] His initial applications were denied, and a hearing was held before an Administrative Law Judge ("ALJ") at plaintiff's request on January 17, 2012. T. 50-99. On November 6, 2013, ALJ Nancy Pasiecznik issued a decision finding plaintiff not disabled. T. 19-49. The Appeals Council denied plaintiff's request for review on May 23, 2015, making the ALJ's determination the final decision of the Commissioner. T. 1-6. This action followed.

**Medical Evidence**

Plaintiff sought care at Erie County Medical Center ("ECMC") on December 15, 2009, upon complaints of leg pain and burning with urination. He told the provider that he was on track with his medications after missing a week of dosages. Diagnoses were HIV, urethra infection, eczema, vitamin D deficiency, and nonspecific arthritis. T. 298.

On January 5, 2010, plaintiff sought emergency treatment at Sisters of Charity Hospital ("Sisters") due to persistent diarrhea, nausea, malaise, weakness, and abdominal pain. He was diagnosed with colitis, prescribed medication, and discharged. T. 335-41.

Four months later, plaintiff returned to ECMC with complaints of leg pain that lasted two or three months, intermittent stomach pain, daily diarrhea, and constant back pain. His extremities were tender upon examination. Diagnoses were HIV; herpes

---

[1] Citations to "T.__" refer to the pages of the administrative transcript.

simplex, no symptoms; bilateral leg pain of unknown etiology; and diarrhea. He was advised to quit smoking and abstain from alcohol. T. 297.

On May 17, 2010, plaintiff reported "tiny bumps" on his body to providers at ECMC. He weighed 144 pounds, and was assessed with a skin rash.  A test was ordered to rule out syphilis. T. 296. On May 24, plaintiff tested positive for syphilis based on a rapid plasma regain test. He received penicillin injections on May 24, June 1, and June 7, 2010. He weighed 141 pounds as of June 1, 2010. T. 293-94.

Plaintiff returned to ECMC on August 9, 2010, with complaints of intermittent, blurred vision; body aches; lack of appetite; stomach problems; and malaise. Plaintiff stated that he had experienced diarrhea twice per day for two to three months.  He was assessed with HIV infection, "multiple complaints ? psychiatric," and was started on Cymbalta.  T. 292 (notation in original).

Plaintiff was consultatively examined by Samuel Balderman, M.D., on October 25, 2010. On examination, plaintiff exhibited normal gait and station with the exception of a 50% squat. Skin and lymph nodes, head and face, keys, ears, nose and throat were normal. His musculoskeletal, neurologic, extremity, and fine motor examinations were normal. Dr. Balderman assessed history of HIV and genital herpes with a fair prognosis, and concluded that plaintiff had mild physical limitations due to chronic viral illness. T. 303-08.

Plaintiff returned to the emergency room at Sisters on November 19, 2010, with complaints of chest pain. He was given a medical examination and diagnostic imaging tests which revealed "elevated ST segments in leads V2, V3, and V4 < 1mm."  T. 356. Plaintiff was diagnosed with costochondritis, treated with Toradol, and discharged. T. 342-56.

On January 24, 2011, plaintiff again complained of chest pain at ECMC. He appeared to have been drinking. Diagnoses were HIV and chest pain. T. 489.

A few weeks later, plaintiff presented at Sisters emergency room for injuries to his toe and hand. He reported drinking daily. Plaintiff was diagnosed with a thumb sprain and a toe contusion, and was prescribed Naprosyn. T. 359-67. During a follow-up appointment dated February 23, 2011, plaintiff stated that his right foot pain had not improved. Although he exhibited tenderness and swelling in the right toe, plaintiff's physical examinations were otherwise normal. He was prescribed Tylenol #3 and Motrin, and was discharged. T. 369-78.

Plaintiff returned to Sisters on April 6, 2011, for gastroenteritis due to food poisoning and chronic foot pain. He weighed 137 pounds and was observed as being slender with anxious behavior, but examination was otherwise normal. He told providers that he drank three shots of vodka the previous afternoon and had been vomiting since the morning hours. He further claimed to have "Burger's Infection" in the right toe. Plaintiff was given short-term prescriptions and was discharged. T. 379-94.

Plaintiff again reported to ECMC on August 16, 2011, with complaints of worsening wrist and knee pain, diarrhea four times per day, "nerve problems," and bumps in his anal and genital region. T. 490. He reported drinking "40 oz." beers twice per day, and was angry and unsettled. *Id.* Plaintiff was prescribed a cream for his warts. T. 491. Pathology testing from that date revealed a high-grade squamous intraepithelial lesion. T. 434.

Following complaints of difficulty passing stool, an ECMC colonoscopy dated September 2, 2011, revealed a normal gastrointestinal tract. T. 420.

On September 6, 2011, plaintiff was seen at Roswell Park Cancer Institute ("Roswell") for complaints of occasional diarrhea, poor appetite, and bilateral leg pain. Past medical history was significant for depression, HIV, and genital herpes. Plaintiff reported daily smoking and drinking. Diagnoses were dysplasia of the anus; asymptomatic HIV status; and condyloma acumnatum. T. 435-51. His performance scale from 1 to 100 was assessed at 80, indicating normal activity with effort, some symptoms of disease. T. 436. Plaintiff had not yet received results from his colonoscopy, which the physician wished to review before proceeding further. T. 444. Following a physical examination, plaintiff was diagnosed with perianal condyloma, human papillomavirus ("HPV"), and anal intraepithelial neoplasia ("AIN") I to II. *Id.*

An EKG performed on September 7, 2011, was abnormal ("borderline ECG; consider left ventricular hypertrophy; anterior infarct, age indeterminate").  T. 454-

55. A Dobutamine stress echocardiogram performed at ECMC on November 4, 2011 revealed left ventricular hypertrophy and early repolarization, and was "nondiagnostic . . . due to pharmacologic protocol." T. 458.

On October 13, 2011, Plaintiff sought care at ECMC for complaints of grogginess, aches, and trouble sleeping. He was drinking five to six 40-ounce beers which was "not helping," and he weighed 140 pounds. T. 492. Diagnoses were HIV, hypertension, sexually transmitted disease exposure, alcohol abuse, and anal and perianal warts. *Id.*

In November, 2011, plaintiff returned to Sisters complaining of intermittent chest, leg, and hand pain. T. 462-76. A physical examination and medical imaging test of plaintiff's chest were unremarkable. He was prescribed Motrin and discharged. T. 436- 469.

A follow-up visit to Roswell on December 6, 2011, indicated that plaintiff's anal dysplasia manifested in itching and bumps, but no other "significant symptoms." T. 457. He did not have diarrhea and weighed 138 pounds. On examination, plaintiff complained of left foot pain at 9/10, but was otherwise unremarkable. He was scheduled for further testing to explain the nature of the bumps. T. 459.

Plaintiff visited both ECMC and Sisters on December 6 and December 17, 2011, respectively, complaining of foot pain. He told providers at ECMC that he was

"drunk and kicked something," he felt dizzy, and had not taken his HIV medication

consistently. T. 493. While at Sisters, he told emergency physicians that he injured his

foot by "tripping on a floor edge" two weeks prior. His symptoms were assessed as mild,

"at worst." T. 484. Plaintiff's physical examination was normal, except for limited range

of motion in his two left toes. T. 485. He was diagnosed with a toe sprain and was given

Motrin. T. 477-85.

Plaintiff's primary care provider completed a Medical Source Statement on

January 10, 2012, which indicated that plaintiff was HIV positive, experienced repeated

episodes of severe malaise and insomnia, and had marked difficulties in completing

tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

T. 523-24. Plaintiff did not have any other syndromes, symptoms, episodes, or marked

restrictions or difficulties, including, but not limited to: herpes simplex manifesting in

mucocutaneous infections for one month or longer at a site other than the skin or

mucous membranes; HIV wasting syndrome; diarrhea lasting for one month or longer,

resistant to treatment; and squamous cell carcinoma of the anal canal or anal margin.

T. 523-24. Plaintiff did not suffer medicinal side effects. T. 524. The doctor opined that

plaintiff could work four hours per day; stand for two hours at a time, and sit for four

hours at a time; lift ten pounds frequently; and had moderate psychiatric limitations in

six of seven functional categories, except for the ability to understand, remember, and

carry out detailed instructions, for which he had no significant impairment. T. 525-26.

The doctor concluded that plaintiff could work part time at that point, but needed

counseling before entering the workforce. T. 526-27.

The Medical Source Statement was submitted to the Appeals Council and was not part of the record before ALJ Pasiecznik.

**Mental Health Treatment**

Plaintiff was seen at the ECMC emergency room by psychiatrist Victoria Brooks, M.D. on April 12, 2011, for care related to alcohol intoxication and grief due to his mother's death several months before. He denied consistent symptoms of depression and anxiety, and minimized his drinking and drug use history. T. 410-16. He was ambivalent about mental health treatment, and told Dr. Brooks that he "just wanted to vent and then [he'd] be good." T. 413. He was living with friends, on public assistance, and could not explain why his functioning was so impaired. *Id.* His mental examination was unremarkable except for poor insight and judgment. T. 414. Dr. Brooks assessed adjustment disorder; alcohol intoxication, rule out abuse and dependence; and cluster B personality traits. She assessed a Global Assessment of Functioning ("GAF") Score of 51-60.[2] T. 415. Plaintiff's father told the doctor that plaintiff had a "big drinking problem," and was in "total denial." *Id.* Plaintiff was advised to avoid alcohol and to follow-up with his primary care providers and a social worker for outpatient counseling.  T. 416.

A May 18, 2012, diagnostic review from Lake Shore Behavioral Health reveals diagnoses of generalized anxiety disorder; alcohol dependence; cannabis

---

[2] The GAF assigns a clinical judgment in numerical fashion to the individual's overall functioning level. *See* www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning .pdf.

dependence, in remission; and personality disorder, not otherwise specified. Plaintiff was also diagnosed with HIV, bronchitis, and herpes simplex. His GAF was assessed in the 50s. T. 509-11. The Court finds this record illegible.

Plaintiff presented at Lake Shore Behavioral Health on June 12, 2012, for a psychological evaluation. At intake, he exhibited circumstantial verbalizations and inappropriate laughter; reported onset of symptoms at age 17, including racing thoughts, restlessness, irritability, anger, and paranoia; and told the provider that he had past visual hallucinations and suicidal ideation. Upon examination, plaintiff had a moderately sad, somewhat anxious mood with slightly labile affect, and moderate ruminations about his symptoms.  Diagnoses were major depression, recurrent, severe, with psychotic features;  generalized anxiety disorder; alcohol and cannabis dependence; personality disorder, NOS; herpes simplex virus, HIV, hypertension, bronchitis, neuropathy, and stress. He was assigned a GAF score of 54. T. 504-08. The Court finds this record to be partially illegible.

Plaintiff's psychological assessment dated June 21, 2012 indicates that he had symptoms consistent with generalized anxiety disorder and personality disorder, not otherwise specified, and met the criteria for alcohol dependence and cannabis dependence, in remission. On examination, plaintiff was cooperative, friendly, and responsive, with euthymic mood and normal thoughts and speech. He exhibited poor emotion regulation, impulse control, and decision-making skills, which he attributed to cannabis use. He reported various anxiety-related symptoms, intense anger, paranoia,

and appeared to lack empathy. Plaintiff admitted to a history of alcohol abuse, and last used cannabis in 2005. He stated that he had little past mental health treatment other than numerous emergency room visits when he was "upset and needed to talk to someone," and "mandated" outpatient care at Horizon Health Services. Group and individual counseling was recommended. T. 512-520. The Court finds this record to be partially illegible.

### Testimonial Evidence

Plaintiff was born in 1979, has a high school diploma and completed some college courses, and previously worked in customer service, janitorial maintenance, and food service, and also as a dispatcher and an assembler. T. 53-62. The impairments alleged as a basis for disability were pain and tendonitis in the hands, arthritis in the knees, neuropathy in the legs, medication causing diarrhea, anxiety, and HIV-related problems. T. 54. He testified that his hand problems, muscle weakness and tingling, hip pain, and diarrhea prevented him from working, and that he had potentially cancerous warts and insomnia. T. 65-70, 73-76, 79, 82, 87.

### The ALJ's Decision

The ALJ issued a decision on November 6, 2013, finding that plaintiff was not under a disability on any date through the date of her decision, because plaintiff's substance abuse was a contributing factor material to a finding of disability. T. 44.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), *see* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) plaintiff did not engage in substantial gainful activity since January 7, 2010; (2) he had the severe impairments of HIV; possible left ventricular hypertrophy; history of an anterior infarct (age indeterminate); an affective disorder; generalized anxiety disorder; personality disorder NOS, with Cluster B and Cluster C traits; and alcohol abuse, rule out dependence; and the non-severe impairments of an episode of bronchitis; sinusitis; vitamin D deficiency; nonspecific urethritis; costochrondritis (chest wall pain); plantar fasciitis; history of genital herpes infection; HPV; AIN I to II and perianal condylomata; cannabis dependence, in reported remission; and history of opiate abuse;  (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work with the ability to lift, carry, push, and pull up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours total in an eight-hour workday, with normal breaks; and could occasionally squat; with the additional limitation of avoiding work where he would be exposed to or able to drink alcohol; (4) if plaintiff stopped his substance abuse, he would be able to perform his past relevant work as a customer service representative, dispatcher, small products assembler, and telemarketer, as that work is generally performed in the national economy and as previously performed by plaintiff; and (5) alternatively, there was other

work that existed in significant numbers in the national economy that plaintiff could perform if he stopped abusing alcohol. T. 22-44.

## DISCUSSION AND ANALYSIS

### Scope of Judicial Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions were based upon an erroneous legal standard. *See Green–Younger v. Barnhart*, 335 F.3d 99, 105–106 (2d Cir. 2003).

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings. Dkt. ##11,

15.  Plaintiff seeks remand or reversal on the grounds that: (1) the ALJ failed to properly

evaluate the evidence under Listing 14.08; (2) the ALJ's mental RFC finding was not

supported by substantial evidence; (3) the ALJ failed to incorporate additional limitations

into the RFC finding; and (4) the Appeals Council failed to properly evaluate material

evidence. Dkt. #11-1 at 16-27.  The Commissioner requests that its determination be

affirmed as the ALJ's decision was supported by substantial evidence in the record. Dkt.

#15-1 at 11-25.

For the reasons that follow, remand is warranted based on the argument

presented in Point 2 of plaintiff's supporting memorandum, which asserts that the ALJ's

mental RFC finding was not supported by substantial evidence. In light of the

determination to remand this matter for further proceedings, the Court declines to reach

plaintiff's remaining contentions. *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y.

2015) (declining to reach remaining challenges to the RFC and credibility assessments

where remand requiring reassessment of RFC was warranted).

**Step Three Finding: Mental RFC Assessment**

Plaintiff challenges the ALJ's determination of his mental RFC because

there was no opinion evidence in the record indicating plaintiff's functional abilities. Dkt.

#11-1 at 20.

It is well-settled that "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'" *Dailey v. Astrue*, No. 09-CV-0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, No. 09-CV-99, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010)) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)).  Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (quotation marks omitted); *see also Jermyn v. Colvin*, No. 13-CV-5093, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed Plaintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.").  While the absence of a function-by-function analysis of a treating source does not necessarily render the record incomplete, *see* 20 C.F.R. § 404.1513(b)(6),  "because an RFC determination is a medical determination," it is error for the ALJ to make this determination "based on medical reports that do not specifically explain the scope of the claimant's work-related capabilities." *McClaney v. Astrue*, No. 10–CV–5421, 2012 WL 3777413, at *10 (E.D.N.Y. Aug. 10, 2012) (internal citation and quotation marks omitted).

Here, the ALJ gave "great weight" to the opinion of psychiatrist Victoria Brooks, M.D., who treated plaintiff at ECMC for grief and alcohol intoxication. T. 410.

During that visit, plaintiff was diagnosed with adjustment disorder with depressed mood, nondependent alcohol intoxication, and Cluster B traits with a GAF of 51-60. T. 415. Based on this evidence, the ALJ found that, without substance abuse, plaintiff's remaining mental impairments would not impose significant limitation on his work-related functioning. T. 42. In her written decision, the ALJ also cited to plaintiff's mental health evaluations on May 18, 2012 and June 21, 2012 in support of plaintiff's diagnoses of anxiety and personality disorder, alcohol and cannabis dependence, and "fair" interpersonal relationships without other significant abnormalities. T. 33. In addition to the absence of a function-by-function assessment in any of these records, they are also largely illegible.[3] In the Court's view, there is no way of knowing on the current record whether or how plaintiff's mental impairments or limitations deteriorated or improved during the relevant time period, to what extent the reports are consistent with one another, and how they, as a whole, relate to his functional abilities.

When records produced are illegible but relevant to the plaintiff's claim, a remand is warranted to obtain supplementation and clarification. *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir.1996) (holding that remand was appropriate where the record was missing evidence, and a significant portion of the available evidence was illegible); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975) ("Where the medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation."); *Chamberlain v. Leavitt*, 2009 WL 385401, *8–9 (N.D.N.Y. Feb. 10, 2009) (holding that "sporadic, brief

---

[3] It is unclear whether the copies submitted to the Court by the Commissioner are identical to those evaluated by the ALJ. Pages 504 through 520 of Administrative Transcript are illegible because of the poor quality of the photocopy.

and in some instances, illegible" treatment records justified remand "to fully and fairly develop the record") (citing *Cutler*, 516 F.2d at 1285). *But see Kruppenbacher v. Astrue*, 2011 WL 519439, *6 (S.D.N.Y. Feb. 14, 2011) (holding that remand was unnecessary where the illegible record was not material to the claims).

Considering two of the three cited treatment records are illegible in this case, and the ALJ afforded great weight to the only one that was legible, remand is necessary to seek clarification of the illegible portions. *Pratts*, 94 F.3d at 38; *Cutler*, 516 F.2d at 1285. Once the evidence from Lake Shore Behavioral Health is fully developed, the Commissioner should reconsider plaintiff's psychological impairments in light of the complete record. Because the matter is remanded for further development of the record, the ALJ should also: (1) re-contact plaintiff's mental health care providers for assessments of plaintiff's functioning with respect to the mental RFC component; and (2) consider the January 10, 2012 Medical Source Statement completed by plaintiff's treating physician, submitted by plaintiff after his hearing before the ALJ.

Accordingly, remand is warranted at step three, and the Court need not reach plaintiff's remaining contentions, as the ALJ's re-evaluation at step three may affect her analysis of the remaining steps in the sequential evaluation. *See Yeomas v. Colvin*, No. 13-CV-6276, 2015 WL 1021796 (W.D.N.Y. Mar. 10, 2015).

## CONCLUSION

For the reasons stated herein, the Commissioner's motion for judgment on

the pleadings (Dkt. #15), is hereby DENIED, and Plaintiffs cross-motion for judgment on

the pleadings (Dkt. #11), is hereby GRANTED insofar as the case is REMANDED to the

Commissioner for further administrative proceedings consistent with this opinion,

pursuant to the fourth sentence of 42 U.S.C. § 405(g).


**SO ORDERED.**

DATED:      Buffalo, New York
            August 25, 2016


                          **s/ H. Kenneth Schroeder, Jr.**
                          **H. KENNETH SCHROEDER, JR.**
                          **United States Magistrate Judge**